UNITED STATES of America

v.

**Freddie SINKLER, Jr.**

**No. CRIM. 1:CR–01–71.**

United States District Court, M.D. Pennsylvania.

July 27, 2001.

Christy H. Fawcett, U.S. Attorney's Office, Harrisburg, PA, for Plaintiff.

Sanford Alan Krevsky, Freddie Sinkler, Jr., Harrisburg, PA, for Defendant.

## MEMORANDUM AND ORDER

KANE, District Judge.

Before the Court is the Defendant's "Pretrial Motion to Suppress Evidence" filed with the Court on May 7, 2001. Defendant seeks the suppression of evidence seized in connection with his January 7, 2001 arrest as violative of the Fourth Amendment of the United States Constitution. Defendant's motion has been briefed and an evidentiary hearing on the motion was held on July 19, 2001.

### Background

The facts leading up the the arrest and seizure are as follows. Just after midnight on January 7, 2001, Officer Raymond Lyda, an eleven year veteran of the Harrisburg Police Department, was patrolling in the area of Sixth and McClay Streets in North Harrisburg, when he spotted a green Jeep Grand Cherokee with a ski rack. This observation was significant to him, because during roll call that evening, as he began the eleven p.m. to seven a.m. shift, he was reminded that Clifford Bradley remained at large on an outstanding warrant for charges of aggravated assault and burglary. Officer Lyda knew from a reliable confidential informant that Bradley, an African–American man, drove three different cars, including a green Jeep Grand Cherokee with a ski rack, and that Bradley had driven the Jeep within the last two weeks. As Officer Lyda patrolled Harrisburg that evening, he kept an eye out for a green Jeep Grand Cherokee with a ski rack.

Officer Lyda pulled alongside the Cherokee at Sixth and McClay Streets. Although the lighting was poor in the area and the vehicle's dark tinted windows limited the officer's view into the car, Officer Lyda was able to observe in the driver's seat a dark-skinned African–American man who matched the general description of Bradley. The man glanced over at the officer, and then turned his face away, covering part of his face with a cell phone, as though to obscure his identity from the policeman. Officer Lyda learned by radio that the car was registered to Freddie R. Sinkler. He knew Freddie Sinkler because he had responded to a domestic disturbance involving him, and he knew that when he last had contact with Sinkler, Sinkler's drivers' license was under suspension.[1] He also remembered that Bradley had a history of fleeing from police.

---

1. Although not made part of the record in this     case, counsel are in apparent agreement that

Because Officer Lyda believed that Bradley was driving the Jeep, he radioed Officer Sunday who pulled his police car up behind the Cherokee and signaled the car with his strobe light. As soon as he did, the driver sped through the red light at the intersection, and then through another red light at Cameron and Elmerton Avenues, and then another. Officer Lyda joined Officer Sunday in pursuit of the Jeep Cherokee, engaging in more than one near collision with the Jeep as it's driver attempted to swerve into the police cruisers. A high speed chase ensued across the George Wade bridge and onto I–81 South to the rural farm areas outside the city.

Harrisburg City Police Officer Martin, responding to a radio call, joined the pursuit in a police transport van, but because of the limitations of his vehicle, trailed as much as two miles behind the Jeep and the other two police vehicles pursuing it. After Martin was notified that the other officers believed the Jeep driver was going to reverse directions and return to the city on North I–81, Martin maneuvered the police van onto the median in an emergency "turn around" and waited. Shortly thereafter, Officer Martin proceeded North on I–81. The Jeep's driver followed behind, making the predicted u-turn and then losing control of the vehicle as it went into a spin. As a result, Martin's police van struck the Jeep, bringing the chase to an end. In the concluding minutes of the chase, officers observed objects being ejected from the Jeep onto the highway median.

The officers arrested the driver, Defendant Freddie Sinkler, and seized from the ground near the car, in undisturbed snow, a backpack, later found to contain drugs and drug paraphernalia. The police also seized a photograph of Defendant and a copy of his social security card from inside the car, and seized cash and a cell phone from Defendant's person. Sinkler argues that the backpack and its contents must be suppressed as the fruit of an unlawful arrest. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Defendant cannot and does not dispute that his conduct in eluding police during a high speed chase would under normal circumstances justify an arrest and search pursuant to arrest based on traffic infractions and for assault on a police officer. However, he argues that in this case, because the initial investigatory stop of the Jeep driver was unlawful, so is the resulting police pursuit, arrest, and recovery of the backpack from the scene. For the reasons that follow, Defendant's argument must fail.

### Discussion

■ It is well settled that police may engage in "investigatory stops" where they possess a reasonable articulable suspicion to believe that the detainee is engaged in or has engaged in recent criminal conduct. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether police possess a "reasonable suspicion" depends on the "totality of the circumstances" and whether there are articulable facts in support of the detention. Where the police officer can demonstrate reasonable suspicion, detention is authorized even in the absence of probable cause to believe that a crime has been committed.

■ Here, Officer Lyda suspected that Clifford Bradley was driving the green Jeep Cherokee at Sixth and McClay Streets. Bradley, whom police sought on a felony warrant, was known to drive a green Jeep Cherokee with a ski rack. Of-

the Jeep was registered to Defendant's father, Freddie Sinkler, Sr. This fact is of no significance here, as the distinction was not noted by the Officer at the time.

ficer Lyda spotted such a vehicle in the uptown area frequented by Bradley, and observed that the driver matched the general description of Bradley. The driver's apparent attempt to conceal his face from the officer heightened Officer Lyda's suspicions. Information received ·by radio that the suspect vehicle was registered to Freddie Sinkler with an uptown Harrisburg address did nothing to undermine the officer's suspicions that it was Bradley in the Jeep. Officer Lyda knew that Bradley drove three different vehicles, but did not know whether Bradley owned any of the cars, including the Jeep. Bradley's use of the Sinkler vehicle was consistent with the officer's knowledge that Sinkler was not in possession of a valid drivers' license on his last contact with him. Officer Lyda, based on all of the circumstances known to him, possessed a reasonable suspicion that Bradley was driving the green Jeep Cherokee, and properly requested that his fellow officer make an investigatory stop. The pursuit, arrest and seizure that followed are thus not tainted by police misconduct. *United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) ("[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion.").

█ The Government also correctly argues that even had police initiated an investigatory stop without reasonable articulable suspicion to do so, no Fourth Amendment violation occurred here because the driver did not submit to police authority. As soon as Officer Sunday flashed his strobe light, the vehicle sped off, triggering a high speed chase. Only when Defendant's vehicle collided with a police vehicle were police able to effect his arrest. Where, as here, a suspect declines

to submit to police authority, no seizure occurs. *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Thus, even adopting Defendant's position that police were not authorized to initiate contact with the Jeep's driver at the stop light, because no detention in fact occurred, the subsequent arrest and seizure are not tainted by any alleged illegality. As in *Hodari D.,* police attempted an investigatory stop, but failed to detain their suspect. In *Hodari D.,* the defendant fled on foot from officers pursuing him and, as he ran, he tossed away a rock of crack cocaine. The Supreme Court found that evidence admissible against. the Defendant. *Id.* at 623, 111 S.Ct. 1547. Similarly here, in the course of fleeing police, Sinkler abandoned his backpack containing contraband. The backpack was properly recovered by police, and is admissible against Defendant.

█ Moreover, the seizure of the backpack, even in the absence of abandonment, would be the product of a lawful arrest. Defendant led three city police officers on a harrowing high speed chase out of the city and across the county line, repeatedly attempting to strike the officers' cars using his own. When Defendant's car finally came to rest and the Defendant was captured, police properly arrested him and searched the areas adjacent to his arrest. Defendant was arrested based on probable cause to believe that he had committed numerous traffic crimes as well as felony assault on a police officer, and that arrest was not tainted by a prior constitutional violation. Police did not violate Defendant's Fourth Amendment in seizing the backpack and it's contents.

**ACCORDINGLY,** Defendant's "Pretrial Motion to Suppress" is **DENIED.**